UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

**CIVIL ACTION NO. 05-50-DLB**

**JOHNNY SHELL, JR.**                                                    **PLAINTIFF**

**vs.**                      **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                    **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on Motion for Summary Judgment of the Plaintiff (Doc. #9) and Motion for Summary Judgment of the Defendant (Doc. #10). Plaintiff seeks review of the Commissioner's decision that he is no longer disabled and terminating his benefits.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Johnny Shell, Jr. is presently 43 years old. He has an eighth grade formal education. His past work experience consists of work at a movie cinema. September 14, 1989, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments. He was found disabled based upon depression, anxiety, and mental retardation, with an onset date of October 31, 1986. (Tr. 16)[1] A comparison point decision was rendered February 5, 1998, at which time Plaintiff's disability status was continued for lack of medical improvement. On May 21, 2001, a Report of Continuing Disability Interview was prepared. (Tr. 34-43) On September 14, 2001, the Commissioner

---

[1]This fact is taken from the ALJ's decision, as the prior findings related to these impairments from Plaintiff's original 1989 applications are not contained in this record.

notified Plaintiff that because of medical improvement, he was no longer considered disabled as of September, 2001. (Tr. 45-49, 51-54) After Plaintiff requested a reconsideration, Plaintiff was notified on October 11, 2002 (tr. 70-72, 74-76) of the Hearing Officer's Decision that, due to medical improvement, he was then capable of performing light capacity work, with some nonexertional limitations and was therefore no longer disabled. (Tr. 77-88)

Plaintiff next requested a hearing before an administrative law judge, which was held on August 12, 2003, in Hazard, Kentucky. (Tr. 334-346)  By written decision dated January 27, 2004, the ALJ ruled that Plaintiff was no longer under a disability and so was not eligible for DIB or SSI payments. (Tr. 16-25) Further review of this decision was denied by the Appeals Council on January 28, 2005. (Tr. 5-7)

The instant action was filed on February 16, 2005.  It has now culminated in cross motions for summary judgment.

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to

affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

In the case of a review of a finding of disability, there is no presumption of a continuing disability. *Cutlip v. Secretary*, 25 F.3d 284, 286-87, n.1 (6th Cir. 1994). When reviewing the Commissioner's decision to *terminate* benefits, courts look to whether substantial evidence supports the decision and whether correct legal standards were applied. *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir.1994). An eight-part sequential evaluation process is used in termination reviews. 20 C.F.R. §§ 404.1594, 416.994.

The Commissioner bears the burden of showing *medical improvement* by establishing that the claimant's medical condition has improved, the improvement is related to the claimant's ability to work, and the claimant is currently able to engage in substantial gainful activity. *Glenn,* 21 F.3d at 987 (citing regulations). The Sixth Circuit describes this review process as follows:

> The first part of the evaluation process, then, focuses on medical improvement. The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." And a medical improvement is only related to an individuals's ability to work "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3).
>
> The second part of the evaluation process relates to ability to engage in substantial gainful activity. Here the implementing regulations incorporate many of the standards set forth in the regulations governing initial disability determinations. *See* 20 C.F.R. § 404.1594(b)(5) and (f)(7). The difference,

3

of course, is that the ultimate burden of proof lies with the Secretary in termination proceedings.

*Nierzwick v. Comm'r of Social Security,* 7 Fed. Appx. 358, 361 (6th Cir. 2001)(unpublished decision)(quoting *Griego v. Sullivan,* 940 F.2d 942, 944 (5th Cir. 1991)).

Thus, this case turns on whether substantial evidence shows that (1) there has been medical improvement in the claimant's impairment; and (2) the claimant now has the ability to engage in substantial gainful activity. If substantial evidence supports both prongs, then the Commissioner correctly terminated claimant's benefits. *Difford v. Secretary*, 910 F.2d 1316, 1318 (6th Cir. 1990).

**B.     The ALJ's Determination**

ALJ Arnold first found Plaintiff had not engaged in substantial gainful activity since his last disability status review. Next, he concluded there was no evidence to indicate Plaintiff now has a severe mental impairment. (Tr. 21) Plaintiff had originally been granted disability benefits on the basis of depression, anxiety, and mental retardation, and his disability status had been continued at the comparison point decision based upon "marked restriction in his functional capacity due to his history of intellectual functioning and anxiety." (*Id.*) The ALJ did, however, find that Shell had severe impairments consisting of psoriasis, psoriatic arthritis, lumbar disc disease, obesity, and status post lateral tibial plateau fracture. (*Id.*)

The ALJ determined that Plaintiff was no longer disabled because, despite his impairments, he had the residual functional capacity (RFC) to perform a full or wide range of light work. (Tr. 23) Although a vocational expert (VE) was present at the administrative hearing, she was not called upon to provide expert opinion testimony. Instead, the ALJ

concluded that since Plaintiff could perform substantially all requirements of light work, a finding of "not-disabled" was called for by Medical-Vocational Rule 202.17. (*Id.*) The ALJ therefore found that Plaintiff's disabled status for Social Security purposes ended as of October 1, 2002. (Tr. 25)

**C.     Analysis**

Plaintiff raises one challenge in his appeal. He argues that the ALJ's decision to terminate benefits is flawed because he erroneously concluded that Plaintiff's mental impairment is not severe. In support of this contention, Plaintiff points to the Mental Residual Functional Capacity Assessments prepared by two nonexamining consulting psychologists, Drs. Ilze Sillers (tr. 170-74) and Edward Stodola (tr. 239-43). In the categories of ability to: "respond appropriately to changes in the work setting," "understand and remember detailed instructions," and  "carry out detailed instructions," Dr. Sillers opined that Plaintiff was moderately limited (tr. 170-71) and Dr. Stodola opined that Plaintiff was somewhere between not significantly limited to moderately limited for the first two, and moderately limited on the third (tr. 239-40). Dr. Stodola also found Plaintiff to be somewhere between not significantly limited to moderately limited in his ability to "maintain attention and concentration for extended periods." (Tr. 239) Plaintiff submits that given these opinions, it was unreasonable for the ALJ to conclude that "there is no evidence to indicate that he has a severe mental impairment," as stated in his decision. (Tr. 21)

In response, the Commissioner argues the ALJ's conclusion that Plaintiff experienced medical improvement is supported by substantial evidence. She submits the evidence reflects Plaintiff's present complaints are focused on his physical condition, not mental health issues. The Commissioner argues that Plaintiff's testimony and his request

for reconsideration list only physical problems, and the focus on physical complaints was also noted by the psychiatric evaluator, Dr. Robert J. Eardley.  The Commissioner further submits that the updated medical evidence reflects that Plaintiff's anxiety has improved with medication.  All of this, argues the Commissioner, provides substantial evidence to support the ALJ's conclusion that Plaintiff has had medical improvement and therefore that his mental condition was nonsevere by October, 2002.

Having reviewed the ALJ's decision, briefing by the parties, and the administrative record, the Court concludes substantial evidence to support the ALJ's finding of nonseverity is lacking.  Specifically, the ALJ's consideration of the status of Plaintiff's mental impairments is inadequate, given the medical source evidence of Plaintiff's anxiety, and given that the ALJ failed to address Plaintiff's mental retardation impairment.

As the ALJ noted, Plaintiff was initially found to be disabled on the basis of depression, anxiety and mental retardation. (Tr. 16) In fact, Plaintiff was found to meet listing 12.05C, and his disability on this basis continued to the time of the comparison point decision in February of 1998. (Tr. 79) A disability finding based upon this listing is imposed when a claimant has a verbal, performance, or full scale IQ between 60 and 70 in combination with another physical or mental impairment that results in additional and significant work-related limitation of function. *See* 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, Listing 12.05C.  When a claimant has been found disabled based upon a listing, the regulations call for additional considerations when examining whether there has been medical improvement and whether the medical improvement is related to a claimant's ability to work.

> If our most recent favorable decision was based on the fact that your
> impairment(s) at the time met or equaled the severity contemplated by the

6

> Listing of Impairments in appendix 1 of this subpart, an assessment of your residual functional capacity would not have been made. If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work. Appendix 1 of this subpart describes impairments which, if severe enough, affect a person's ability to work. If the appendix level of severity is met or equaled, the individual is deemed, in the absence of evidence to the contrary, to be unable to engage in substantial gainful activity. If there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to your ability to work. We must, of course, also establish that you can currently engage in gainful activity before finding that your disability has ended.

20 C.F.R. §§ 404.1594(c)(3)(i), 416.994(b)(2)(iv)(A). Since Plaintiff's disability finding in this case was based upon Listing 12.05C, his RFC was not assessed. Logically, since the ALJ found Plaintiff's mental impairment to be nonsevere, it may reasonably be inferred the ALJ concluded Plaintiff's impairments would no longer meet or equal Listing 12.05C. The reason this must be inferred is because the ALJ's decision is devoid of any discussion or analysis on this point.

After Plaintiff was first found disabled in 1986 due to depression, anxiety, and mental retardation, his continued disability finding was apparently based, at least in part, on consultative psychological evaluations in 1989 and 1997 by James Leisenring, MS. These evaluations are not contained in the administrative record, but are referred to in the October, 2002 Analysis of Evidence and Findings of Fact completed by the disability hearing officer (tr. 77-88) when Plaintiff requested a reconsideration of the September, 2001 cessation (tr. 55-57). According to the hearing officer's accounts, Leisenring reported Plaintiff's 1989 IQ testing showed a verbal scale IQ of 71, performance scale IQ of 64 and full scale IQ of 66. (Tr. 79) Leisenring's attempted 1997 IQ testing of Plaintiff "revealed the claimant to obtain scores placing him in the profoundly retarded range." (*Id.*) According to

7

that hearing officer's notes, Plaintiff sought a reconsideration of the cessation of disability decision based not just on physical problems but also a reading disorder. (*Id.*) That officer's notes from the August 28, 2002, hearing reflect Plaintiff's ability to read and write was "not too good" (tr. 58). That officer in October, 2002 concluded Plaintiff no longer met Listing 12.05C, but did have both severe physical and mental impairments. (Tr. 82-88)

ALJ Arnold's noticeably absent analysis of Plaintiff's mental retardation and/or borderline intellectual functioning in conjunction with his consideration of Plaintiff's mental impairments compels remand of his January 2004 decision. In assessing Plaintiff's mental impairments, the ALJ placed controlling weight on the July 5, 2001, psychiatric evaluation by Dr. Robert J. Eardley. (Tr. 150-55) In his report, Dr. Eardley noted Leisenring's IQ testing results, but performed no IQ testing himself. (Tr. 150) In the "Current Manifestations of the Mental Disorder" section of his report, Dr. Eardley notes simply that "no intellectual *deterioration* noted." (Tr. 154)(emphasis added). His summary offers no specific recommendations or restrictions from an intellectual standpoint; and he notes generally that Plaintiff showed sustained concentration and persistence during the course of the evaluation, and that Shell has the ability to understand, remember, and carry out instructions. (Tr. 155)

Both Dr. Sillers and Dr. Stodola marked category 12.05 mental retardation on the Psychiatric Review Technique forms they completed (tr. 156, 225) and in the "categories" section of the Mental Residual Functional Capacity Assessments each completed (tr. 170, 239). This was not noted or discussed by ALJ Arnold. The ALJ states Plaintiff has "mild" deficiencies in each of the functional limitation areas of the "B" Criteria of the Listings – "restriction of activities of daily living," "difficulties in maintaining social functioning," and

8

"difficulties in maintaining concentration, persistence, or pace." (Tr. 21)  However, Drs. Sillers and Stodola both noted that he has moderate, not mild, difficulty in maintaining concentration, persistence, or pace. (Tr. 166, 235) Though the ALJ states "[t]he evidence indicates" Plaintiff has mild deficiency in this area, the ALJ does not identify the evidence he looked to in making this finding.

In considering Plaintiff's intellectual abilities, the ALJ remarks that Plaintiff has a formal eighth grade, limited education. (Tr. 23) The only other comment about Plaintiff's intellectual capabilities is the ALJ's reference to the fact that at the comparison point decision in 1998, Plaintiff "had marked restriction in his functional capacity due to his history of intellectual functioning and anxiety," but the ALJ now "finds that there has been a decrease in medical severity based on symptoms and signs associated with claimant's impairments present at the time of the most recent favorable determination." (Tr. 21) However, the ALJ offers no particular evidentiary basis for a "decrease in medical severity" of Plaintiff's "intellectual functioning."  He comments that Plaintiff can carry out a full range of activities and interact with others appropriately, without actually explaining these conclusions or the evidentiary bases for them.  From the Court's review of the record, Plaintiff has lived with relatives since first determined to be disabled and has not undertaken any work-like activities since 1986.  Neither was Plaintiff questioned about his intellectual capacity and functioning in the course of the administrative hearing, where he appeared *pro se*. (Tr. 336)

The Court also concludes that the ALJ did not give adequate consideration to the evidence related to Plaintiff's anxiety condition in finding that his mental impairment was not severe.  The Sixth Circuit has held that the Step 2 severity regulation is a "*de minimis*

9

hurdle in the disability determination process." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citing *Farris v. Sec'y of Health & Human Servs.,* 773 F.2d 85, 90 (6th Cir. 1985)). However, a claim that is "obviously lacking medical merit" can be dismissed if it is "totally groundless solely from a medical standpoint." *Id.* at 862-63 (quoting *Farris,* 773 F.2d at 90 n.1).

It is difficult to fathom that an individual's mental impairments which once were such that they met a listing do not now clear a "*de minimis* hurdle." Or at least the ALJ has not pointed to substantial evidence that they do not. The ALJ relies heavily on Dr. Eardley's evaluation statements in his July 2001 report that Plaintiff "appears able to make personal and social adjustments," has "the ability to understand, remember, and carry out instructions," and, at least in the course of the interview, interacted cooperatively and showed concentration and persistence. (Tr. 155) Yet Dr. Eardley's report also reflects that he diagnosed Plaintiff with an anxiety disorder, even if that diagnosis was based upon Plaintiff's statements to him. (Tr. 154) Eardley also opines that "[t]here may be a functional nonpsychotic disorder based on the claimant's statements that he gets nervous in situations and his nerves are bad...." (*Id.*) The doctor's summary does not say Plaintiff can make *occupational* adjustments. ("As far as this claimant's ability to reason and make occupational, personal, and social adjustments, the claimant appears able to make *personal* and *social* adjustments." Tr. 155 (emphasis added)). Dr. Eardley comments that Plaintiff has demonstrated an ability to adapt and tolerate stress associated with his *home*

day-to-day activities, but remarks nothing about his ability to adapt and tolerate work stresses. (*Id.*)

The ALJ also failed to note or consider other evidence related to anxiety. Again, Plaintiff was not asked about his anxiety and symptoms or manifestations thereof when he appeared for the hearing, even though anxiety was one of the bases for which he was originally found to be disabled. The May 21, 2001, Report of Continuing Disability Interview form signed by Shell, though written by a third party, includes nerves and low education among the reasons for which he receives disability. (Tr. 34-43) He reported no improvement in any of his disabling conditions and said his arthritis and psoriasis were worse. (Tr. 34) Though Plaintiff's September, 2001 Report seeking reconsideration identified his disabling conditions only as arthritis, back and psoriasis (tr. 105-112), that document was filled in by someone else, which person also noted he had difficulty writing and comprehending (tr. 111). The August 28, 2002, Form SSA-1205-BK, Disability Hearing Officer's Report of Disability Hearing, reports that Shell cannot read/write/speak/ understand English "too good" (tr. 58), that Plaintiff said he was in special ed classes, gets nervous and tore up too easily, gets real nervous which makes his skin break out (tr. 59), that understanding can be a problem, gets nervous, has memory problems, but can pretty well stay focused (tr. 64). (*See* also Tr. 80).

As for medical evidence pertaining to Plaintiff's anxiety other than Dr. Eardley's report, the ALJ makes selective references to the current medical source notes. For example, the ALJ makes it a point to note that treating physician Dr. Ahsanul Haque remarked on October 31, 2001, that Plaintiff was doing fine on his medications (tr. 20) and that on December 23, 2002, treating physician Dr. Matthew Gooch said that Plaintiff's

11

complaints of anxiety had improved with Paxil (tr. 21).  These are but two from a number of office notes reflecting that Plaintiff has continued to regularly seek medical care and attention for his anxiety as well as his physical complaints, that the doctors continue to note anxiety as a working diagnosis, and that he has been prescribed anxiety medication on a regular basis. (Tr. 186-215,  283-333) For example, on August 12, 2003, Dr. Gooch also notes that Plaintiff's anxiety symptoms have been persistent and increasing. (Tr. 290) Even the selected December, 2002 office note of Dr. Gooch that was spotlighted by the ALJ states Plaintiff's anxiety had improved *slightly* with Paxil. (Tr. 305) By May of 2003 Dr. Gooch was noting that Plaintiff's anxiety was not under good control and that his Paxil needed to be increased. (Tr. 294) Moreover, from a timing standpoint, Drs. Eardley, Sillers, and Stodola did not have the benefit of these updated treatment records at their evaluations and reviews. (Tr. 174, 243)

The nonexamining agency consultant reports by Drs. Sillers and Stodola also remark that Plaintiff has 12.06 anxiety-related disorders. (Tr. 156, 166, 225, 235) This disorder, along with the 12.05 mental retardation noted by these doctors, led to the mental capabilities and limitations identified by them on the Psychiatric Review Technique forms and Mental RFC Assessments they completed.  The ALJ does not specifically reference or discuss these reports, instead focusing on Dr. Eardley's report.  The ALJ must discuss them to comply with 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii). ("Unless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work

for us."). Given the other deficiencies in the ALJ's consideration of Plaintiff's mental impairments and any medical improvement thereof, the ALJ's error in failing to explain the weight given to these reports cannot be viewed as harmless. His decision must therefore be reversed and remanded for further consideration of Plaintiff's mental impairments.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **GRANTED**.

A judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 6th day of March, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-50-ShellMOO.wpd